# ORIGINAL

1  **WEILAND, GOLDEN,**
   **SMILEY, WANG EKVALL & STROK, LLP**
2  Jeffrey I. Golden, State Bar No. 133040
   Michael R. Adele, State Bar No. 138339
3  650 Town Center Drive, Suite 950
   Costa Mesa, California  92626
4  Telephone: (714) 966-1000
   Facsimile:  (714) 966-1002
5
   Attorneys for Weneta M.A. Kosmala,
6  Chapter 7 Trustee

7

**FILED**

MAR 1 5 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                   **SANTA ANA DIVISION**

| | |
|---|---|
| 11  In re | Case No.: SA 01-20377 ES |
| 12  CBL INSURANCE SERVICES, INC., | Chapter 7 Case  ᏕᎥᏤ |
| 13                   Debtor. | Adv. Case No.: ___Adv C7-0107SES___ |
| 14 | |
| 15  WENETA M.A. KOSMALA, Chapter 7 | **COMPLAINT FOR:** |
| 16  Trustee for CBL Insurance Services, Inc., | (1) **VIOLATION OF THE AUTOMATIC BANKRUPTCY STAY AND CONTEMPT OF COURT;** |
| 17                   Plaintiff, | (2) **CONVERSION;** |
| | (3) **MONEY HAD AND RECEIVED;** |
| 18 | (4) **CONSTRUCTIVE TRUST;** |
| | (5) **BREACH OF FIDUCIARY DUTY/** |
| 19              vs. | **WRONGFUL DISPOSITION OF FUNDS IN CLIENT TRUST** |
| 20  SENNA INVESTMENTS, LLC, GIRARDI & | **ACCOUNT;** |
| 21  KEESE, LLP, AND CHUCK SEVEN, | (6) **INTENTIONAL INTERFERENCE WITH CONTRACT;** |
| | (7) **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC** |
| 22 | **ADVANTAGE** |
| 23                   Defendants. | (8) **BREACH OF CONTRACT;** |
| | (9) **TURNOVER;** |
| 24 | (10) **ACCOUNTING;** |
| | (11) **INJUNCTION; AND** |
| 25 | (12) **ATTORNEYS' FEES** |

26      Plaintiff Weneta M.A. Kosmala (the "Plaintiff" or "Trustee"), the chapter 7 trustee

27  for the bankruptcy estate (the "Estate") of CBL Insurance Services, Inc. (the "Debtor"),

28  respectfully alleges as follows:

#212316v2<FIRM> -COMPLAINT                    1                                    COMPLAINT

1  **STATEMENT OF JURISDICTION AND VENUE**

2  1.  This Court has jurisdiction over this adversary proceeding pursuant to 28

3  U.S.C. §§ 157 and 1334.  This adversary proceeding is a core proceeding pursuant to 28

4  U.S.C. § 157(b)(2)(A), (E), and (O).

5  2.  Venue properly lies in this judicial district because this adversary

6  proceeding arises under title 11 of the United States Code, and is also related to a case

7  under title 11, as required by 28 U.S.C. § 1409.

8  **PARTIES TO THE ACTION**

9  3.  Plaintiff is the duly appointed chapter 7 trustee for the Debtor's bankruptcy

10  case.

11  4.  Plaintiff is informed and believes and based thereon alleges that Defendant

12  Senna Investments, LLC ("Senna") is a limited liability company.

13  5.  Plaintiff is informed and believes and based thereon alleges that Defendant

14  Girardi & Keese, LLC ("Girardi") is a limited liability company.

15  6.  Plaintiff is informed and believes and based thereon alleges that Defendant

16  Chuck Seven ("Seven") is an individual.

17  **STATEMENT OF STANDING**

18  7.  Plaintiff has standing to bring this proceeding pursuant to 11 U.S.C. §§ 105,

19  323, 542, and 550.

20

21  **GENERAL ALLEGATIONS**

22  8.  On December 19, 2001, CBL Insurance Services, Inc., filed a voluntary

23  petition for relief under Chapter 7 of the Bankruptcy Code ("Petition") and Weneta M.A.

24  Kosmala was appointed Chapter 7 Trustee of the bankruptcy case (the "Bankruptcy

25  Case").

26  9.  Through an order entered March 17, 2004, in the Bankruptcy Case (the

27  "Order"), the Court approved an Asset Purchase Agreement (the "Agreement") between

28  the Plaintiff (acting on behalf of the Debtor) and Senna, which authorized Senna to

1  pursue certain litigation claims specified in the Agreement (the "Claims"), and allocated

2  80% of the net proceeds of the litigation to Senna and 20% of the net proceeds of the

3  litigation to the Estate.  In addition to approving the Agreement, the bankruptcy court

4  ordered that:

5         4.  The fees and costs of counsel for Senna to pursue the litigation claims
       as set forth in the Agreement must be reasonable and the Bankruptcy

6         Court will retain jurisdiction to determine the reasonableness of the fees
       and costs of counsel for Senna;

7

8         5.  Senna will pay to the estate 20% of the net proceeds (gross proceeds
       less reasonable fees and costs of counsel for Senna identified in paragraph
       4 above) from the litigation recoveries promptly after the proceeds of the

9         litigation are recovered by Senna.

10  A true and correct copy of the Order, together with the Asset Purchase Agreement

11  approved by the Order, is attached hereto as Exhibit 1.

12       10.  The Asset Purchase Agreement was signed by Seven (among others) on

13  behalf of Senna as the "Buyer," and by the Trustee on behalf of the Estate as "Seller,"

14  and provides (among other things) that:

15         With respect to the Buyer's recovery on the Claims, the Buyer is to
       retain 80% of the net proceeds collected, with the estate retaining 20% of

16         the net proceeds collected.  Net proceeds shall be the amounts collected
       after deducting attorneys' fees and costs.  The gross proceeds shall be

17         deposited into Buyer's attorney's Trust Account and may be distributed
       pursuant to the formula set forth above without further Court order.  *See*

18         Agreement, ¶ 2.

19         The Seller shall be afforded a lien on the portion of any recoveries
       allocated to the Seller hereunder, and such portion shall be deemed

20         property of the estate held by the Buyer in trust for the Seller.  *See*
       Agreement, ¶ 2(h).

21

22         Buyer shall provide regular written quarterly status reports to Seller
       detailing the status of all present and prospective litigation, with the first

23         report being submitted 90 days from entry of an order approving the
       Agreement.  *See* Agreement, ¶ 8.

24         If the Buyer materially fails to comply with this Agreement, the Seller
       shall have the ability, in her sole discretion, to obtain a Bankruptcy Court

25         order re-vesting rights and claims in the Seller and/or seeking damages for
       any such breach.  *See* Agreement, ¶ 12.

26

27         If any legal action is brought for the enforcement of this Agreement
       or because of any alleged dispute, breach, default or misrepresentation in
       connection with any of the provisions of this Agreement, the successful or

28         prevailing Party shall be entitled to recover its reasonable attorneys' fees

1    and all other costs incurred in that action in addition to any other relief to which it may be entitled. *See* Agreement, ¶ 20.

2

3    The resolution of any and all disputes between the Debtor and the Buyer concerning this Agreement and the Assets shall be resolved by the United States Bankruptcy Court for the Central district of California, Santa

4    Ana Division. *See* Agreement, ¶ 22.

5    Each Party hereto acknowledges that time is strictly of the essence in the performance of each Party's obligations hereunder. *See* Agreement,

6    ¶ 25.

7    11.    Plaintiff is informed and believes and based thereon alleges that after entry

8 of the Order approving the Asset Purchase Agreement, Senna litigated the Claims by

9 filing suit against Fidelity and Deposit Company of Maryland ("F&D") in Orange County

10 Superior Court, Case No. 03CC14812 (the "Litigation"), on or about December 18, 2003.

11    12.    Plaintiff is informed and believes and based thereon alleges that, after

12 initially hiring counsel to prosecute the Litigation on an hourly fee basis, Senna

13 terminated its initial counsel's engagement and retained Girardi to continue prosecuting

14 the Litigation on a contingent fee basis.

15    13.    Plaintiff is informed and believes and based thereon alleges that, prior to

16 settlement of the Litigation (and, likely, prior to accepting the engagement), Girardi

17 became aware of the Order and Asset Purchase Agreement and obtained actual and/or

18 constructive knowledge of the contents of these documents, including without limitation

19 the Estate's ownership of and right to 20% of the Net Proceeds of the Litigation, and the

20 Estate's lien upon said proceeds.

21    14.    Plaintiff is informed and believes and based thereon alleges that Senna did

22 not provide the quarterly reports required by the Asset Purchase Agreement, and only

23 reluctantly provided information about the Litigation (if at all) upon request.

24    15.    Plaintiff is informed and believes and based thereon alleges that Senna did

25 not promptly inform the Trustee about settlement of the Litigation.

26    16.    Plaintiff is informed and believes and based thereon alleges that, on or

27 about January 2, 2007, Senna settled the Litigation through a document entitled,

28 Agreement and Mutual Release ("Settlement Agreement"), which was signed by F&D,

1  Senna (on behalf of itself and as successor in interest to the Debtor), Seven (as a

2  Management Committee Member and President of Senna) and Girardi (as counsel for

3  Senna as, among other things, successor in interest to the Debtor).  The Settlement

4  Agreement provided that, upon execution of the agreement, F&D would deliver to

5  Senna's counsel, Girardi, a check in the amount of One Million Five Hundred Thousand

6  Dollars ($1,500,000) payable to the Girardi & Keese Trust Account.  Through the

7  Settlement Agreement, Senna purported to act on behalf of itself and the Debtor in

8  releasing the Claims against F&D.

9       17.    Plaintiff is informed and believes and based thereon alleges that

10  Defendants reached a separate settlement agreement with Jack Smith/IRM for $30,000.

11  (The $1,500,000 payment and $30,000 payment shall hereafter be referenced as the

12  "Settlement Payments.")

13       18.    Plaintiff is informed and believes and based thereon alleges that Girardi

14  received the Settlement Payments and placed them in its trust account.

15       19.    Plaintiff is informed and believes and based thereon alleges that,

16  notwithstanding Defendants' knowledge of the Estate's ownership of 20% of the Net

17  Proceeds of the Settlement Payments, their knowledge of the Estate's lien in the

18  Settlement Payments to secure payment to the Estate of the Estate's 20% share of the

19  Net Proceeds, and their knowledge that the funds were being held in trust by Senna (and

20  Girardi) for the benefit of the Estate, Defendants conspired to and did distribute (and

21  aided and abetted the distribution of) the Estate's funds amongst themselves, interfered

22  with the Estate's lien, exercised improper dominion and control over the Estate's assets

23  and generally impeded the Estate's ability to recover its assets.

24       20.    Specifically, Plaintiff is informed and believes and based thereon alleges

25  that, rather than retain the Settlement Payments in Girardi's trust account, as required by

26  the Asset Purchase Agreement, or pay them to Senna and the Estate in accordance with

27  the Asset Purchase Agreement, or obtain a court order allowing payments not in

28  accordance with the Asset Purchase Agreement, Girardi distributed $633,059.17 to itself

1  as attorneys' fees and costs of the Litigation, and distributed the remaining $866,940.83
2  to Senna.

3      21.    Plaintiff is informed and believes and based thereon alleges that said
4  distributions were made pursuant to a document entitled Consent to Settlement and
5  Authorization to Make Disbursements (the "Consent Form"), which was signed by Seven
6  on behalf of Senna.  A true and correct copy of (an unexecuted copy of) said Consent is
7  attached hereto as Exhibit 2.

8      22.    Plaintiff has demanded the share of the Settlement Payments owed to the
9  Estate, but Defendants have failed and refused to tender *any* amount to Plaintiff.

10      23.    Instead, Senna has purported to account for the distribution of the
11  Settlement Payments through a document attached hereto as Exhibit 3, and has claimed
12  that further offsets in unspecified amounts must be made before the distribution of any
13  funds to the Estate.

14      24.    Plaintiff is informed and believes and based thereon alleges that Senna's
15  purported deductions and offsets are false (if not fraudulent) and/or unreasonable and
16  include, among other things: (a) an improper $175,000 deduction for time purportedly
17  spent by Senna's principals in connection with the litigation; and (b) $765,573.42 in
18  attorneys' fees and costs, which is purportedly comprised of a one third contingency fee
19  to Girardi of $510,000, litigation costs purportedly paid to Girardi in the amount of
20  $153,059.17, and additional attorneys' fees and costs paid to another law
21  firm in connection with the Litigation in the amount of $102,514.25.  The $175,000
22  deduction is not authorized under the Asset Purchase Agreement (or any other
23  agreement between the Parties), and is a false (if not fraudulent) attempt to decrease the
24  Net Proceeds of the Settlement Payments through unauthorized deductions so as to
25  improperly decrease the Estate's share of those proceeds.  Moreover, the fees and costs
26  claimed by Senna, which represent 51% of the Settlement Payments, are unreasonable.
27  If Senna wanted to use a contingent fee lawyer, it could have and should have done so
28  from inception of the action, in which case its likely fees and costs would not have

1  exceeded 40% of the Settlement Payments (or 33% of the Settlement Payments plus
2  costs).

3      25.    In short, the Defendants interfered with the Estate's lien, improperly
4  removed the Estate's assets from Girardi's trust account, breached or interfered with the
5  Asset Purchase Agreement, sought to reduce the Estate's share of the Net Proceeds by
6  asserting blatantly improper deductions, violated the court's Order requiring prompt
7  payment to the Estate of its share of the Net Proceeds, exercised improper dominion and
8  control over assets of the Estate, converted Estate assets for their own personal benefit
9  and violated the automatic bankruptcy stay.

10              **FIRST CLAIM FOR RELIEF**

11      **(Violation of the Automatic Bankruptcy Stay and Contempt of Court)**

12              **(Against Defendants Girardi and Senna)**

13      26.    Plaintiff realleges and incorporates by this reference each and every
14  allegation contained in paragraphs 1 through 25 as though fully set forth herein.

15      27.    Under paragraph 2(h) of the Asset Purchase Agreement, the 20% Net
16  Proceeds of the Settlement Payments "shall be deemed property of the estate held by
17  the Buyer in trust for the Seller."

18      28.    Plaintiff is informed and believes and based thereon alleges that: (a) Girardi
19  prepared the Consent Form for signature of Senna, improperly seeking "authorization" to
20  distribute the Settlement Payments (including the portion of the Settlement Payments
21  that constituted property of the Estate); (b) Senna signed the Consent Form improperly
22  authorizing distribution of the Settlement Payments (including the portion of the
23  Settlement Payments that constituted property of the Estate); (c) Girardi improperly
24  removed the Settlement Payments from its client trust account and distributed them to
25  itself and Senna (including the portion of the Settlement Payments that constituted
26  property of the Estate); and (d) Girardi and Senna have failed and/or refused to turn over
27  to Plaintiff the 20% Net Proceeds of the Settlement Payments belonging to the Estate.

28

29.    In so doing, Girardi and Senna committed "act[s] to obtain property of the estate" and are continuing to "exercise control over property of the estate" in violation of the automatic bankruptcy stay, 11 U.S.C. § 362(a)(3).

30.    In addition, Senna is violating the Order by failing to turn over said proceeds to Plaintiff "promptly after the proceeds of the litigation are recovered by Senna."

31.    As a proximate cause of said actions, the Estate has been injured in an amount to be determined at trial, but which is no less than the Net Proceeds of the Settlement Payments.

32.    Plaintiff is informed and believes and based thereon alleges that the conduct of Girardi and Senna was (and continues to be) intentional, willful, malicious, despicable and/or otherwise sufficiently reprehensible as to warrant imposition of punitive damages and/or contempt sanctions for intentional violation of the automatic stay and/or court Order.

## SECOND CLAIM FOR RELIEF

### (Conversion)

### (Against Defendants Girardi and Senna)

33.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

34.    As a proximate result of the aforementioned conduct, Girardi and Senna have wrongfully exerted dominion over property of the Estate in a manner inconsistent with the rights of the Estate to obtain those assets, and have wrongfully converted assets of the Estate to their own use and benefit.

35.    At the time of conversion, the Estate had more than a mere contractual right to the assets, the Estate owned said assets (which were "deemed property of the estate held by the [Senna] in trust for [the Estate]"), "was deemed to have a lien thereon," and had a right to receive those funds promptly (pursuant to the Asset Purchase Agreement and the court Order).

1      36.    As a proximate result of the conduct of Girardi and Senna, the Estate has

2 been injured in an amount to be determined at trial, but which is estimated to be no less

3 than $152,885.31.

4      37.    Plaintiff is informed and believes and based thereon alleges that the

5 conduct of Girardi and Senna was (and continues to be) willful, malicious, despicable

6 and/or otherwise sufficiently reprehensible as to warrant imposition of punitive damages.

7 **THIRD CLAIM FOR RELIEF**

8 **(Money Had and Received)**

9 **(Against Defendants Girardi and Senna)**

10      38.    Plaintiff realleges and incorporates by this reference each and every

11 allegation contained in paragraphs 1 through 25 as though fully set forth herein.

12      39.    As a proximate result of the aforementioned conduct, Girardi and Senna

13 had and received money, which should have been held in trust by Girardi and Senna in

14 Girardi's client trust account and then paid over to Plaintiff for the benefit of the Estate,

15 which in equity and good conscience belongs to the Estate, and which should be turned

16 over to Plaintiff forthwith.

17 **FOURTH CLAIM FOR RELIEF**

18 **(Constructive Trust)**

19 **(Against Defendants Girardi and Senna)**

20      40.    Plaintiff realleges and incorporates by this reference each and every

21 allegation contained in paragraphs 1 through 25 as though fully set forth herein.

22      41.    As a proximate result of the aforementioned conduct, the moneys owed to

23 the Estate (which are currently believed to be no less than $152,885.31) were, are and/or

24 should be deemed held in constructive trust for the Estate, notwithstanding their wrongful

25 distribution to Girardi and Senna, and the Estate is entitled to recover said money from

26 Girardi and Senna.

27

28

#212316v2<FIRM>-COMPLAINT          9         COMPLAINT

## FIFTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty/Wrongful Disposition of Funds in Client Trust Account)

### (Against Girardi and Senna)

42.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

43.    Under paragraph 2(h) of the Asset Purchase Agreement, the 20% Net Proceeds of the Settlement Payments "shall be deemed property of the estate held by the Buyer in trust for the Seller."

44.    Under paragraph 2 of the Asset Purchase Agreement, the Settlement Payments were to be held in Senna's attorney's trust account, *i.e.,* Girardi's trust account, and were only authorized to be distributed "pursuant to the formula set forth above without further court order."

45.    Thus, absent court order, the Asset Purchase Agreement required that the Settlement Payments remain in the trust account unless 80% of the Net Proceeds were paid to Senna and 20% of the Net Proceeds were paid to the Estate.

46.    Because the funds were expressly "held by Buyer [Senna] in trust for Seller [the Estate]," Senna had a fiduciary obligation to the Estate with regard to the care and custody of those funds.  Senna breached its fiduciary obligations to the Estate by allowing and, indeed, authorizing the distribution of Settlement Payment funds from the Girardi client trust account in a manner inconsistent with the formula expressed in the Asset Purchase Agreement (*i.e.,* in a manner that did not include distribution of 20% of the Net Proceeds to the Estate).

47.    Plaintiff is informed and believes and based thereon alleges that because the Settlement Agreement called for payment of the Settlement Funds into Senna's attorneys' (*i.e.,* Girardi's) trust account, because said funds were deposited into Girardi's trust account pursuant to the Settlement Agreement, and because Girardi knew the terms of the Asset Purchase Agreement (*i.e.,* that 20% of the Net Proceeds of the Settlement Payments belonged to the Estate, that the Settlement Payments were to be

deposited into Senna's attorney's [Girardi's] Trust Account, and that distribution of the proceeds was only authorized "pursuant to the formula set forth above without further Court order"), Girardi knew that 20% of the Net Proceeds of the Settlement Payments held in its client trust account were funds that belonged to the Estate and that *none* of the Settlement Payments could be distributed, absent a Court order, unless the Estate received its portion as part of the distribution.

48.    In light of the above, Girardi was a fiduciary of the Estate with regard to the care, custody and disposition of the 20% Net Proceeds belonging to the estate.

49.    Girardi breached its fiduciary obligations to the Estate by distributing the Settlement Payments from its client trust account in a manner inconsistent with the formula expressed in the Asset Purchase Agreement (*i.e.*, in a manner that did not include a distribution of 20% of the Net Proceeds to the Estate), and by otherwise distributing to itself and/or Senna the Estate's 20% share of the Net Proceeds.

50.    As a proximate result of said actions, the Estate has been injured in an amount to be determined at trial, but which is no less than the Net Proceeds of the Settlement Payments, which are currently believed to be no less than $152,885.31.

51.    Plaintiff is informed and believes and based thereon alleges that the conduct of Girardi and Senna was (and continues to be) willful, malicious, despicable and/or otherwise sufficiently reprehensible as to warrant imposition of punitive damages.

### SIXTH CLAIM FOR RELIEF

**(Intentional Interference with Contract)**

**(Against Defendants Girardi and Seven)**

52.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

53.    Plaintiff is informed and believes and based thereon alleges that Girardi and Seven knew of the Asset Purchase Agreement and the terms stated therein.

54.    Plaintiff is informed and believes and based thereon alleges that Girardi and Seven knew that: (1) 20% of the Net Proceeds of the Settlement Payments

1  belonged to the Estate, and were held in trust for the Estate by Girardi and Senna; and

2  (2) the Estate had a lien upon said funds, which were to remain in Girardi's trust account

3  and not distributed, absent court Order, other than pursuant to the 80%/20% Net

4  Proceeds distribution formula.

5      55.    Plaintiff is informed and believes and based thereon alleges that Seven

6  improperly authorized Girardi to remove Estate funds from Girardi's client trust account

7  and pay them over to Girardi and Senna, without following the distribution formula set

8  forth in the Asset Purchase Agreement and without a court order.

9      56.    Plaintiff is informed and believes and based thereon alleges that Girardi

10  improperly removed Estate funds from its client trust account and paid them over to itself

11  and Senna, without following the distribution formula set forth in the Asset Purchase

12  Agreement and without a court order.

13      57.    Through said actions, and the actions previously described in this

14  Complaint, Girardi and Seven: (a) interfered with the Estate's lien rights; (b) aided,

15  abetted and otherwise proximately caused the conversion of Estate property; (c) aided,

16  abetted and otherwise proximately caused a violation of the automatic stay; and (d)

17  otherwise committed independently wrongful acts that they knew would interfere with the

18  Estate's contractual rights under the Asset Purchase Agreement.

19      58.    As a proximate result, Girardi and Seven intentionally interfered with the

20  Estate's contractual rights under the Asset Purchase agreement, and the Estate has

21  been damaged in an amount to be determined at trial that is currently believed to be no

22  less than $152,885.31.

23      59.    Plaintiff is informed and believes and based thereon alleges that the

24  conduct of Girardi and Seven was willful, malicious, despicable and/or otherwise

25  sufficiently reprehensible as to warrant imposition of punitive damages.

26

27

28

### SEVENTH CLAIM FOR RELIEF

#### (Negligent Interference with Prospective Economic Advantage)

#### (Against Defendant Girardi)

60.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

61.    Plaintiff is informed and believes and based thereon alleges that Girardi knew of the Asset Purchase Agreement and the terms stated therein.

62.    Plaintiff is informed and believes and based thereon alleges that Girardi knew that: (1) 20% of the Net Proceeds of the Settlement Payments belonged to the Estate, and were held in trust for the Estate by Girardi and Senna; and (2) the Estate had a lien upon said funds, which were to remain in Girardi's trust account and not distributed, absent court Order, other than pursuant to the 80%/20% Net Proceeds distribution formula.

63.    Plaintiff is informed and believes and based thereon alleges that there was a special relationship between the Estate and Girardi, arising to the level of a fiduciary relationship, because Girardi was aware that: (a) such funds were to be (and were) deposited in a client trust account maintained by Girardi; (b) such funds were owned by the Estate; (c) the Estate held a lien against said funds; and (d) injury to the Estate was highly likely and foreseeable from any disbursement other than as specified in the Asset Purchase Agreement.  Indeed, the point of the provision in the Asset Purchase Agreement requiring that the litigation proceeds be deposited into Senna's attorneys' trust account, and only authorizing distribution of the funds without a court order "pursuant to the [80%/20% Net Proceeds distribution] formula," was to assure that either the Estate funds would be disbursed to the Estate, or they would remain accessible and safeguarded in the trust account of Senna's attorney (and free from the risk of dissipation).  At the very least, as a result of these circumstances, Girardi owed the Estate a duty to refrain from negligently disposing of Estate assets and to refrain from

negligently interfering with the economic advantage the Estate should have received as a result of the Asset Purchase Agreement.

64.     Plaintiff is informed and believes and based thereon alleges that Girardi improperly removed Estate funds from its client trust account and paid them over to itself and Senna, without following the distribution formula set forth in the Asset Purchase Agreement and without a court order, thereby proximately causing damage to the Estate's ability to recover said funds.

65.     Through said actions, and the actions and those previously described in this Complaint, Girardi: (a) interfered with the Estate's lien rights; (b) aided, abetted and otherwise proximately caused the conversion of Estate property; (c) aided, abetted and otherwise proximately caused a violation of the automatic stay; and (d) otherwise committed independently wrongful acts which interfered with the Estate's prospective economic advantage in and from the Asset Purchase Agreement.

66.     Girardi's conduct constitutes negligent interference with the Estate's prospective economic advantage.

67.     As a proximate result of Girardi's negligent conduct, Girardi has damaged the Estate in an amount to be determined at trial (which amount is currently believed to be no less than $152,885.31).

## EIGHTH CLAIM FOR RELIEF

### (Breach of Contract, Including Contractual Breach of the

### Implied Covenant of Good Faith and Dealing)

### (Against Defendant Senna)

68.     Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

69.     The Estate and Plaintiff performed all of their obligations under the Asset Purchase Agreement, except those obligations that were excused or which they were justified in not performing.

70.     Senna breached its obligations under the Asset Purchase Agreement by, *inter alia*: (a) failing to provide status reports required by paragraph 8 of the agreement; (b) authorizing and allowing, without court order, removal of the Settlement Payments from Girardi's trust account in a manner inconsistent with the 80%/20% distribution formula for Net Proceeds specified in paragraph 2 of the agreement; (c) interfering with the Estate's lien rights, specified in paragraph 2(h) of the agreement, to the Estate's 20% share of the Net Proceeds; and (d) failing to distribute the Estate's 20% share of the Net Proceeds promptly (despite the fact that paragraph 25 of the agreement expressly provides that time is of the essence in the performance of duties thereunder).

71.     Moreover, implied into every contract, including the Asset Purchase Agreement, is a covenant of good faith and fair dealing that requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.

72.     Senna breached the covenant of good faith and fair dealing contained within the Asset Purchase Agreement by, *inter alia*: (a) failing to provide the status reports required by the agreement; (b) authorizing and allowing disbursement of the Settlement Payments from Girardi's trust account, without requiring that 20% of the Net Proceeds be paid to the Estate; (c) interfering with the Estate's lien rights by authorizing and allowing transfer of the Settlement Payments from Girardi's trust account, without requiring that 20% of the Net Proceeds be paid to the Estate; (d) failing to promptly pay to the Estate its 20% share of the Net Proceeds; (e) spuriously deducting $175,000 from the Settlement Payments in calculating purported Net Proceeds on the grounds that Senna principals spent time preparing for trial (even though the Asset Purchase Agreement made no provision for any such deduction); (f) claiming that none of the Settlement Payments related to the assets purchased from the CBL Estate, despite the fact that the Litigation *asserted CBL's claims* and the Settlement Agreement was made by Senna on behalf of itself *and as assignee of CBL*, and despite the fact that Senna claimed to be holding $117,885.32 in a "trust account" at Wells Fargo as the Estate's

20% share of the purported "preliminary Net Proceeds"; (g) failing and refusing to turnover promptly to the Estate (or at all) the $117,887.32 (or any portion thereof) that it claimed to be holding in a "trust account" at Wells Fargo as the Estate's 20% share of the purported "preliminary Net Proceeds," despite the provision in the Asset Purchase Agreement that time was of the essence and the court Order requiring prompt payment of said funds to the Estate; and (h) violating the court Order that authorized and approved the Asset Purchase Agreement, which Order expressly required Senna to pay the Estate 20% of the Net Proceeds "promptly after the proceeds of the litigation are recovered by Senna."

73.    In short, Senna consistently, reprehensibly and despicably acted to injure the right of the Estate to receive the benefits of the Asset Purchase Agreement.

74.    One of the remedies expressly provided to the Estate in the Asset Purchase Agreement where, as here, Senna materially failed to comply with the agreement, was that the Trustee (*i.e.*, Plaintiff) "shall have the ability, in her sole discretion, to obtain a Bankruptcy Court order re-vesting rights and claims in the [Estate] and/or seek[ ] damages for any such breach." Given the bad faith exhibited by Senna and its consistent efforts to injure the right of the Estate to receive the benefits of the Asset Purchase Agreement, the Estate is contractually entitled to an order re-vesting the rights and claims in the Estate (which, at this point, would consist of vesting in the Estate the right to the entirety of the $1,530,000 in Settlement Payments).

75.    As a proximate result of Senna's breach of contract, the Estate has been damaged in an amount to be determined at trial (which amount is currently believed to be no less than $152,885.31). Alternatively, as a result of Senna's material breach of contract through consistent bad faith conduct designed to injure (and which did injure) the right of the Estate to receive the benefits of the Asset Purchase Agreement, the Estate is contractually entitled to the entirety of the $1,530,000 in Settlement Payments.

## NINTH CLAIM FOR RELIEF

### (Turnover)

**(Against Girardi and Senna)**

76.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

77.    As a proximate result of the aforementioned conduct, Girardi and Senna are in possession and control of assets of the Estate, which are currently believed to be no less than $152,885.31 and which may be as high as $1,530,000.

78.    Girardi and Senna are required to turn over to the Plaintiff all property of the Estate in their possession, pursuant to 11 U.S.C. § 542.

### TENTH CLAIM FOR RELIEF

**(Accounting)**

**(Against Girardi and Senna)**

79.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

80.    As a result of the foregoing, Plaintiff is entitled to an accounting of the Settlement Payments, all or part of which constitute property of the Estate.

### ELEVENTH CLAIM FOR RELIEF

**(Injunction)**

**(Against Girardi and Senna)**

81.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

82.    Senna has failed to comply with paragraph 5 of the court Order requiring Senna to "pay to the estate 20% of the net proceeds . . . from the litigation recoveries promptly after the proceeds of the litigation are recovered by Senna."

83.    Plaintiff is entitled to injunctive relief compelling Senna to comply with the Order by requiring immediate payment to the Estate of the Estate's 20% share of the Net Proceeds.

84.    Additionally and/or alternatively, Plaintiff is entitled to injunctive relief compelling Senna and Girardi to restore the *status quo ante*, by returning to Girardi's

1   client trust account (or a comparable interest bearing escrow account) all or part of the

2   $1,530,000 in Settlement Payments, until such time as the Estate's ownership rights in

3   those funds can be determined.

4                           **TWELFTH CLAIM FOR RELIEF**

5                  **(Attorneys' Fees and Costs Pursuant to Rule 7008(b))**

6                             **(Against Girardi and Senna)**

7        85.    Plaintiff realleges and incorporates by this reference each and every

8   allegation contained in paragraphs 1 through 25 as though fully set forth herein.

9        86.    Plaintiff is entitled to recover attorneys' fees and costs from Girardi

10   because of its willful violation of the automatic bankruptcy stay.

11        87.    In addition, Plaintiff is entitled to recover attorneys' fees and costs from

12   Senna because of Senna's willful violation of the automatic bankruptcy stay (and/or its

13   willful violation of the court Order requiring prompt payment to the Estate of 20% of the

14   Net Proceeds), and because of Senna's violation of the Asset Purchase Agreement

15   (which contains a provision allowing the prevailing party in an action on that contract to

16   recover reasonable attorneys' fees and costs).

17        **WHEREFORE,** Plaintiff prays that the Court enter a judgment in favor of Plaintiff

18   and against the Defendants, as follows:

19                        **ON THE FIRST CAUSE OF ACTION**

20   1.    For actual damages, including attorneys' fees and costs to the extent

21         allowable, according to proof at trial;

22   2.    For punitive damages and/or sanctions for contempt of the automatic

23         bankruptcy stay (including, to the extent allowable) recovery of the Estate's

24         attorneys' fees and costs;

25

26                        **ON THE SECOND CLAIM FOR RELIEF**

27   3.    For actual damages, according to proof at trial;

28   4.    For turnover of property belonging to the Estate;

5.    For punitive damages;

## ON THE THIRD CLAIM FOR RELIEF

6.    For actual damages, according to proof at trial;

7.    For turnover of property belonging to the Estate;

## ON THE FOURTH CLAIM FOR RELIEF

8.    For turnover of property belonging to the Estate;

## ON THE FIFTH CLAIM FOR RELIEF

9.    For actual damages, according to proof at trial;

10.    For punitive damages;

## ON THE SIXTH CLAIM FOR RELIEF

11.    For actual damages, according to proof at trial;

12.    For punitive damages;

## ON THE SEVENTH CLAIM FOR RELIEF

13.    For actual damages, according to proof at trial;

## ON THE EIGHTH CLAIM FOR RELIEF

14.    For actual damages, according to proof at trial;

15.    For attorneys' fees and costs as prevailing party under the contract;

## ON THE NINTH CLAIM FOR RELIEF

16.    For turnover of property belonging to the Estate;

### ON THE TENTH CLAIM FOR RELIEF

17.    For an accounting;

### ON THE ELEVENTH CLAIM FOR RELIEF

18.    For a temporary restraining order, preliminary injunction and/or other injunctive relief requiring Senna to comply with the Order or, alternatively, compelling Senna and Girardi to restore the *status quo ante*, by returning to Girardi's client trust account (or a comparable interest bearing escrow account) all or part of the $1,530,000 in Settlement Payments until such time as the Estate's ownership rights in those funds can be determined.

### ON THE TWELFTH CLAIM FOR RELIEF

19.    For attorneys' fees and costs against Girardi for willful violation of the automatic bankruptcy stay, and against Senna for Senna's willful violation of the automatic bankruptcy stay, willful violation of the court's Order and breach of the Asset Purchase Agreement (which contains a prevailing party provision);

### ON ALL CAUSES OF ACTION

20.    For pre-judgment interest; and

21.    For such other and further relief as the Court deems just and proper.

DATED: March 15, 2007

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: _____
        MICHAEL R. ADELE

Attorneys for Weneta M.A. Kosmala,
Chapter 7 Trustee

# ORIGINAL



FILED
MAR 1 6 2004
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

1  Ronald S. Hodges - Bar No. 150586
   Mark Bradshaw – Bar No. 192640
2  MARSHACK SHULMAN HODGES & BASTIAN LLP
   26632 Towne Centre, Suite 300
3  Foothill Ranch, California 92610-2808
   Telephone:  (949) 340-3400
4  Facsimile:  (949) 340-3000

5  Attorneys for Senna Investments, LLC



ENTERED
MAR 1 7 2004
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

6

7

8

9

10

11

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

12  CBL INSURANCE SERVICES, INC.,

13      Debtor.

)  Case No. SA 01-20377 RA
)
)  Chapter 7
)
)  [PROPOSED] ORDER ~~GRANTING~~
)  CHAPTER 7 TRUSTEE'S MOTION FOR
)  ORDER APPROVING SALE OF
)  SUBSTANTIALLY ALL OF THE ASSETS
)  OF THE ESTATE PURSUANT TO 11
)  U.S.C. §§363(b) AND (f) TO SENNA
)  INVESTMENTS, LLC, OR IN THE
)  ALTERNATIVE, AN ORDER
)  ABANDONING ASSETS OF THE ESTATE
)  PURSUANT TO 11 U.S.C. §554
)
)  Date: February 3, 2004
)  Time: 3:00 p.m.
)  Ctrm: 6C
)

21      The Motion of Weneta M.A. Kosmala, the Chapter 7 Trustee (the "Trustee")

22  of the estate of the debtor CBL Insurance Services, Inc. (the "Debtor"), for order

23  authorizing the Trustee to sell substantially all of the assets of the estate pursuant

24  to 11 U.S.C. §§336(b) and (f) to Senna Investments, LLC (the "Motion") came on

25  for hearing on February 3, 2004 at 3:00 p.m. before the Honorable Robert W.

26  Alberts, United States Bankruptcy Judge Presiding.

27      Senna Investments, LLC ("Senna") appeared through its counsel, Marshack

28  Shulman Hodges & Bastian LLP by Ronald S. Hodges and Mark Bradshaw.  The

1

MARSHACK SHULMAN
HODGES & BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

2993-000\G:\Wp\Cases\S-T\Senna\Pld\Sale-9019 Order_002.doc

203
MM

EXHIBIT (1) PAGE 21

1  Trustee appeared through her counsel, Albert Weiland & Golden by Jeffrey Golden,

2  Robert Cirac appeared through his attorneys, Polis & Associates by Thomas J.

3  Polis, Steve Gould appeared through his counsel, Callahan & Blaine by Kathleen

4  Dunham, and Joe Bartholomew appeared through his counsel, Goshgrian &

5  Marshall by Jack T. Humes.   Other parties appeared as reflected in the Court's

6  record.

7         The Court having reviewed the Motion, the Declarations and Memorandum

8  of Points and Authorities filed in support thereof, the oppositions, the replies, all

9  other supplemental pleadings filed in relation to the Motion, and the pleadings and

10 documents on file with the Court, and having considered argument and

11 representations of ~~counsel and others who appeared~~ *appearing parties* at the hearing on the Motion,

12 ~~and having found that:~~

13         ~~(a)   timely, adequate and sufficient notice of the Motion was given~~

14              ~~to all parties;~~

15         (b)   Senna has acted in good faith and is entitled to all of the

16              protections set forth in 11 U.S.C. § 363(m);

17         (c)   granting the Motion is in the best interest of the estate and

18              ~~creditors; and~~

19         ~~(d)   other~~ good cause exists for granting the Motion.

20 **IT IS HEREBY ORDERED** that the Motion is granted as follows:

21    1.    The Trustee is authorized to enter into the agreement (the

22 "Agreement") for the sale of the assets with Senna.   A true and correct copy of

23 the Agreement is attached hereto as Exhibit "A";

24    2.    The terms of the Agreement are approved;

25    3.    The Trustee is authorized to execute any documents or take any

26 actions reasonably necessary to effectuate the terms of the Agreement;

27    4.    The fees and costs of counsel for Senna to pursue the litigation claims

28 as set forth in the Agreement must be reasonable and the Bankruptcy Court will

MARSHACK SHULMAN
HODGES & BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

2993-000\G:\Wp\Cases\S-T\Senna\Pld\Sale-9019 Order_002.doc

2

EXHIBIT 1   PAGE 22

1  retain jurisdiction to determine the reasonableness of the fees and costs of counsel

2  for Senna;

3         5     Senna will pay to the estate 20% of the net proceeds (gross proceeds

4  less reasonable fees and costs of counsel for Senna identified in paragraph 4

5  above) from the litigation recoveries promptly after the proceeds of the litigation

6  are recovered by Senna; and

7         6.    Notwithstanding any other provision in the Agreement or this Order,

8  no rights of the Trustee or the Debtor in American Automobile Insurance

9  Company's ("AAIC") errors and omissions policies are transferred or assigned to

10  Senna and the releases granted in Paragraph 6 of the Agreement shall not

11  constitute a release of the subrogation rights of AAIC.  AAIC retains all rights of

12  subrogation that it has or would have in the absence of the Agreement.

13

14  Dated: 3/16/07

15                                    THE HONORABLE ROBERT W. ALBERTS
                                      UNITED STATES BANKRUPTCY JUDGE
16

17  SUBMITTED BY:

18  MARSHACK SHULMAN HODGES & BASTIAN LLP

19  By:
           Ronald S. Hodges, Esq.
20         Mark Bradshaw, Esq.
           Attorneys for Senna, LLC
21

22  APPROVED AS TO FORM AND CONTENT:

23  KAUFMAN & LOGAN LLP

24
                    SEE FACSIMILE
25  By:           SIGNATURE ATTACHED
           Paula Donsavage, Esq.
26         Attorneys for American Automobile
           Insurance Company
27

28                          [Signature continued on next page.]

MARSHACK SHULMAN
HODGES & BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

2993-000\G:\Wp\Cases\B-T\Senna\Pld\Sale-9019 Order_002.doc

EXHIBIT  1   PAGE 23

1  retain jurisdiction to determine the reasonableness of the fees and costs of counsel

2  for Senna;

3      5    Senna will pay to the estate 20% of the net proceeds (gross proceeds

4  less reasonable fees and costs of counsel for Senna identified in paragraph 4

5  above) from the litigation recoveries promptly after the proceeds of the litigation

6  are recovered by Senna; and

7      6.    Notwithstanding any other provision in the Agreement or this Order,

8  no rights of the Trustee or the Debtor in American Automobile Insurance

9  Company's ("AAIC") errors and omissions policies are transferred or assigned to

10  Senna and the releases granted in Paragraph 6 of the Agreement shall not

11  constitute a release of the subrogation rights of AAIC. AAIC retains all rights of

12  subrogation that it has or would have in the absence of the Agreement.

13

14  Dated:

    THE HONORABLE ROBERT W. ALBERTS
15    UNITED STATES BANKRUPTCY JUDGE

16  SUBMITTED BY:

17  MARSHACK SHULMAN HODGES & BASTIAN LLP

18

19  By:        SEE FACSIMILE
           Ronald S. Hodges, Esq. ATTACHED
20         Mark Bradshaw, Esq.
           Attorneys for Senna, LLC
21

22  APPROVED AS TO FORM AND CONTENT:

23  KAUFMAN & LOGAN LLP

24

25  By: _____
       Paula Donsavage, Esq.
26     Attorneys for American Automobile
       Insurance Company
27

28              [Signature continued on next page.]

                         3

EXHIBIT  1  PAGE  24

1 | ALBERT, WEILAND & GOLDEN, LLP

2

3 | By: _____ **SEE FACSIMILE** _____
   | **SIGNATURE ATTACHED**
   | Reem J. Bello, Esq.

4 | Attorneys for Weneta M.A. Kosmala,
   | Chapter 7 Trustee

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARSHACK SHULMAN
HODGES & BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

2993-000\G:\Wp\Cases\S-T\Senna\Pkh\Sale-9019 Order_002.doc

4

EXHIBIT 1 PAGE 25

Received at: 2:48PM, 3/10/2004

MAR. 10. 2004  2:46PM   ALBERT, WEILAND & GOLDEN, LLP                    NO. 2071   P. 2003/005



1  ALBERT, WEILAND & GOLDEN, LLP

2

3  By: _____

4      Reem J. Bello, Esq.
       Attorneys for Weneta M.A. Kosmala,
5      Chapter 7 Trustee

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

EXHIBIT 1   PAGE 26

EXHIBIT  1    PAGE 27

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is entered into on December ___, 2003 by and between Weneta M.A. Kosmala, Chapter 7 Trustee of the estate of In re CBL Insurance Services, Inc., ("Seller") on the one hand, and Senna Investments, LLC ("Buyer") or its assignee, on the other hand. The Seller and Buyer are referred to herein, collectively, as the "Parties."

### I.
### RECITALS

1.    On December 19, 2001, CBL Insurance Services, Inc., ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("Petition") and Seller was appointed Chapter 7 Trustee.

2.    Seller wishes to sell, and Buyer wishes to buy all assets (the "Assets") owned by the Debtor's estate, tangible and intangible, including but not limited to, the estate's interest in, all patents and intellectual property, cash, accounts receivable, insurance policies and premises paid thereon, all claims for relief and choses in action of any kind against all third parties including officers, directors and insurance carriers which provided insurance of any kind to the estate, or received payment of premiums from the estate, and all other things described below on the terms and conditions hereinafter set forth.

3.    Seller believes that a sale of the Assets is in the best interest of the estate and its creditors.

4.    The Buyer has conducted and is satisfied with its good faith due diligence review of the estate, including the Assets, liabilities, books and records, financial statements and other records and accounts of the estate and is not relying upon any representations of the Seller, her counsel or her agents.

NOW THEREFORE, based upon the Recitals set forth herein, and in consideration of the representations, warranties, covenants and agreements set forth herein, and upon the terms and subject to the conditions set forth herein, the Parties agree as follows:

### II.
### PURCHASE AND SALE OF ASSETS

Subject to the terms and conditions of this Agreement, on the Closing Date, the Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase, acquire and accept from the Seller, all of the estate's right, title and interest in and to all of the properties, rights, claims for relief, choses in action, contracts, interests, claims and other assets of any nature whatsoever of the estate, wherever located, whether tangible or intangible, real, personal or mixed, whether scheduled or not by the Debtor, as of the Closing Date (collectively, the "Assets"), "as-is," "where-is," with no

C:\WP9\JKK\1422.WPD                                                    1

EXHIBIT A PAGE 5

EXHIBIT  1  PAGE 28

representations or warranties by Seller and subject to all liens and encumbrances (§ 363(b)).

### III.
### PURCHASE PRICE AND PAYMENT

1.  Purchase Price.  The purchase price to be paid by Buyer for the Assets shall be Seventy Thousand Dollars ($70,000.00) to be paid as follows:

a.  Forty Thousand Dollars ($40,000.00), in cash or certified funds, upon execution of the Agreement, but no later than December 19, 2003; and

b.  Thirty Thousand Dollars ($30,000.00), in cash or certified funds, by January 12, 2004 but no later than the two days prior to the hearing for approval; and

c.  In addition, as outlined below, the Seller will recover a percentage of the Buyer's recovery in pursuit of the Claims (as defined below).

In the event this Agreement is not approved by the Court, all monies paid by Buyer shall be fully refunded to Buyer within five (5) calendar days from the date Buyer requests the refund.

2.  Assignment of Claims.  In consideration for the covenants and releases set forth below, all of the estate's rights, claims, choses in action and interests in property, whether scheduled or not by the Debtor (the "Claims") shall be assigned to Buyer, "as-is," "where-is," without representation or warranty.  With respect to the Buyer's recovery on the Claims, the Buyer is to retain 80% of the net proceeds collected, with the estate retaining 20% of the net proceeds collected.  Net proceeds shall be the amounts collected after deducting attorneys' fees and costs.  The gross proceeds shall be deposited into Buyer's attorney's Trust Account and may be distributed pursuant to the formula set forth above without further Court order.  The Claims shall include, but not be limited to, the following:

a.  Turnover Orders.  Buyer believes that certain principals and/or agents of the Debtor have failed to turn over to the Seller certain computers, records, documents and other property pertaining to the assets and claims of the estate (including certain promissory notes, etc. in the claimed face amount of $6 million pertaining to policies financed by the Debtor,) and that claims therefore exist for the turnover of such properties.

b.  Work-Up/Rescission/Cancellation Claims re $6 Million Asset.  A number of policies were assigned to the Buyer pursuant to which the Buyer (or, in certain instances, one of its members) became the owner of the policy.  The Buyer made pre-petition tenders on certain of the policies and, post-petition tenders on other Claims assigned to it.  The Buyer will pursue cancellation/rescission seeking a full return or, in certain instances, a pro rata return, of the premiums paid.

EXHIBIT A  PAGE 6

EXHIBIT  1    PAGE 29

c.    *General Claims Against Insurers and Principals of the Debtor.* the Buyer, the individual Investors, and the estate hold claims for general damages that may be asserted against the insurance companies and other individuals due to the harm committed by the insurers or principals of the Debtor, who are vicariously liable through their appointed agents who were principals of, or affiliated with, the Debtor. The Buyer shall be entitled to pursue such claims independently and as successor in interest to the estate.

d.    *Transfers of Funds/Diverted Commission Payments.* Bank records obtained by the Buyer strongly suggest that principals of the Debtor removed a significant amount of cash shortly before this case was filed. It also appears that commission payments and/or pending transactions were diverted from the Debtor. The Buyer shall have the right to pursue all such claims.

e.    *Section 108.* The Buyer shall succeed to all rights, extensions and benefits afforded to the Seller and/or the estate under 11 U.S.C. § 108 concerning the Claims.

f.    *Avoidance Actions.* Bankruptcy claims of the estate arising under any of Sections of 362, 510, and 542 through 550 of the Bankruptcy Code.

g.    *Documents.* With the exception of documents protected by the attorney/client privilege or the work product doctrine, as those apply between the Seller and counsel, and with the further exception of documents otherwise privileged or protected by law or Court order (excluding pre-petition communications), the Seller shall at the Buyer's request provide the Buyer with the originals of all documents received or maintained by the Seller in connection with this bankruptcy case.

h.    *Liens/Priorities.* The Seller shall be afforded a lien on the portion of any recoveries allocated to the Seller hereunder, and such portion shall be deemed property of the estate held by the Buyer in trust for the Seller. The amounts of any recoveries allocated to the Buyer hereunder shall be the sole and separate property of the Buyer and shall not be deemed property of the estate. In the event any portion of such recoveries is, contrary to the foregoing, deemed to be property of the estate, the Buyer shall be deemed to have a lien thereon and shall be entitled to the distribution in accordance with the terms hereof. The Seller has the right to file a UCC-1 and/or a notice in any pending litigation to perfect such security interest and the Buyer agrees to execute any documents reasonably necessary to effect this provision.

3.    Excluded Assets. The Parties expressly understand and agree that Seller is not hereunder selling, assigning, transferring or conveying to Buyer, the following properties, rights, contracts, interests, claims and other assets of the estate (collectively, "Excluded Assets"):

a.    Minute books, stock record books and corporate certificates of authority of the estate.

b.    The purchase price set forth in Section III.1. of this Agreement.

4.    <u>Allocation of Proceeds</u>. The Buyer shall bear all costs and attorneys' fees incurred pursuing the Claims.

5.    <u>Due Diligence</u>. Buyer has performed its own due diligence and is not relying upon seller.

6.    <u>Release of Seller, Estate and Counsel</u>. Buyer, on behalf of itself, and its heirs, spouses, offspring, executors, administrators, insurance companies, predecessors, successors, assigns, agents, servants, employees, corporations, officers, directors, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, parents, trustees, subsidiaries, shareholders, past and present, or anyone else claiming by and through it, does hereby acknowledge full and complete satisfaction of and does hereby fully and forever release and discharge Seller, as well as her heirs, spouses, offspring, executors, administrators, predecessors, agents, servants, employees, corporations, partnerships, partners, associates, attorneys, representatives, past and present, and each of them, from any and all claims, demands and causes of action of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, whether concealed or hidden, which Buyer now owns or holds or may hereafter have against Seller, by reason of any matter relating to the Assets. Buyer shall not be entitled to file any proof of claim in the estate. Provided, however, that this release shall not operate to release, diminish, modify, abridge or discharge: (a) of any liabilities of any person or entity other than the Seller and her counsel, and specifically shall not extend to any of the Debtor's pre-petition officers, directors, shareholders, employees or agents; or (b) any claims held by the Seller.

Seller, on behalf of themselves, her heirs, spouses, offspring, executors, administrators, insurance companies, predecessors, successors, assigns, agents, servants, employees, corporations, officers, directors, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, parents, trustees, subsidiaries, shareholders, past and present, or anyone else claiming by and through it, does hereby acknowledge full and complete satisfaction of and does hereby fully and forever release and discharge Buyer, as well as its heirs, spouses, offspring, executors, administrators, predecessors, successors, assigns, agents, servants, employees, corporations, affiliates (including, but not limited to Senna Corp.) officers, directors, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, parents, trustees, subsidiaries, shareholders, past and present, and each of them, from any and all claims, demands and causes of action of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, whether concealed or hidden, which Seller now own or hold or may hereafter have against Buyer, by reason of any matter relating to the Assets. Provided, however, that this release shall not operate to release, diminish, modify, abridge or discharge: (a) of any liabilities of any person or entity other than the Seller and her counsel, and specifically shall not extend to any of the Debtor's pre-petition officers, directors, shareholders, employees or agents; or (b) any claims held by the Seller.

It is a condition hereof, and it is the intention of the Parties hereto in executing this Agreement and in giving the Releases set forth herein, that the same shall be

C:\WP5\JKG\1422.WPD                              4

EXHIBIT A PAGE 8

EXHIBIT 1 PAGE 31

effective as a bar to each and every claim, demand, and cause of action, matter or thing specified; and in furtherance of this specific intention, the Parties hereby expressly waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected this settlement with the debtor."

The Parties hereto represent and warrant that they have been advised to seek advise from independent legal counsel of their own choosing regarding this Agreement and its terms and language, and understand and acknowledge the significance and consequence of these Releases, and the specific waiver of Section 1542, and the Parties hereto, and each of them, expressly consent that this Agreement and the Releases set forth herein shall be given full force and effect according to each and all of their express terms and provisions, including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action herein above specified.

7.    Indemnification.  Buyer agrees to indemnify and hold harmless Seller from any claims, damages and liability arising out of or relating to this Agreement, or the Buyer's pursuit of any of the Claims.

8.    Status Reports.  Buyer shall provide regular written quarterly status reports to Seller detailing the status of all present and prospective litigation, with the first report being submitted 90 days from entry of an order approving the Agreement.

9.    Effective Date.  This Agreement shall be effective as of December 19, 2003, upon execution.

10.   As-is, Where-is Without Representations or Warranties.  The Seller transfers and assigns all of its right, title and interest in or to the Claims, as-is, where-is without representation or warranty and subject to liens, and does not warrant title to the Claims; likewise, the Buyer does not warrant or guaranty any recoveries hereunder.

11.   Bankruptcy Court Approval.  The Agreement is subject to Bankruptcy Court approval.  However, the parties intend to be bound upon execution of this Agreement.  The Closing Date shall be the date an order is entered approving this Agreement.

12.   Seller Right Upon Breach of Buyer.  If the Buyer materially fails to comply with this Agreement, the Seller shall have the ability, in her sole discretion, to obtain a Bankruptcy Court order re-vesting rights and claims in the Seller and/or seeking damages for any such breach.

13.   Cooperation in Certain Matters.  Except as otherwise specifically addressed in this Agreement, Buyer and Seller shall cooperate with each other in

C:\WP91\JIG\1422.WPD                                    5

EXHIBIT A PAGE 9

EXHIBIT 1 PAGE 32

providing to each other reasonably requested documents, and other evidence appropriate to effectuate the transactions provided by this Agreement.

14.    Entire Agreement; Amendments.  This Agreement (including all attachments hereto which shall be deemed a part of this Agreement) contains the entire understanding of the Parties hereto with respect to the transactions described and contemplated in this Agreement and supersedes and cancels all prior written and oral agreements in principle, letters of intent, understandings or other agreements among the Parties hereto with respect to such subject matter and may be amended only by a written instrument executed by each of the Parties hereto.

15.    Headings.  Section headings contained herein are for reference purposes only and shall not affect in any manner the meaning or interpretation of this Agreement.

16.    Notices.  All notices, claims, certificates, requests, demands and other communications hereunder shall be in writing and shall be served as follows:

If to the Seller:    Weneta M.A. Kosmala, Chapter 7 Trustee of the estate of
In re CBL Insurance Services, Inc.
P.O. Box 16279
Irvine, CA 92623-9998
Telephone:   (714) 540-3600
Facsimile:    (714) 708-0666

With a copy to:    Jeffrey I. Golden Esq.
Albert, Weiland & Golden, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Telephone:   (714) 966-1000
Facsimile:    (714) 966-1002

If to the Buyer    Ryan Seven
Senna LLC
18201 Von Karman Avenue, Suite 1170
Irvine, CA 92612
Telephone:   (949) 633-7771
Facsimile:    (949) 975-1177

With a copy to:    Ronald S. Hodges, Esq.
Marshack Shulman Hodges & Bastian LLP
26632 Towne Centre, Suite 300
Foothill Ranch, California 92610-2808
Telephone:   (949) 340-3400
Facsimile:    (949) 340-3000

-- or to such other address as the Party to whom notice is to be given may have furnished to the other in writing in accordance herewith. All notices shall be deemed received on the date of service of such notice if notice is effectuated via telefacsimile

C:\WPRAJIG\1422.WPD                6

transmission or by hand delivery, or, if notice is effectuated by first-class mail, on the third business day after such notice is mailed.

17.    Counterparts.  This Agreement may be executed in any number of original, fax or copied counterparts, and all counterparts shall be considered together as one agreement.  A faxed or copied counterpart shall have the same force and effect as an original signed counterpart.  Each of the Parties hereby expressly forever waives any and all rights to raise the use of a fax machine to deliver a signature, or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a fax machine, as a defense to the formation of a contract..

18.    No Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provisions of this Agreement, nor shall any such waiver constitute a continuing waiver.  No waiver shall be binding unless executed by the Party making the waiver.

19.    Invalidity.  In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein, shall, for any reason, by held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement or any other such instrument.

20.    Attorneys' Fees.  If any legal action is brought for the enforcement of this Agreement or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing Party shall be entitled to recover its reasonable attorneys' fees and all other costs incurred in that action in addition to any other relief to which it may be entitled.

21.    Governing Law.  This Agreement is to be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and where state law is implicated, the laws of the State of California shall govern.

22.    Bankruptcy Court Jurisdiction.  The resolution of any and all disputes between the Debtor and the Buyer concerning this Agreement and the Assets shall be resolved by the United States Bankruptcy Court for the Central District of California, Santa Ana Division.  Further, if a dispute arises, such dispute may initially be resolved through the Mediation Program pending in the United States Bankruptcy Court for the Central District of California..

23.    Interpretation.  Each of the Parties hereto acknowledge that this Agreement is the product of extensive negotiations between the Parties hereto and that this Agreement shall not be construed more strictly against one Party than against another Party.  Unless the context in this Agreement requires otherwise, the gender (or lack of gender) of all words used in this Agreement includes the masculine, feminine and the neuter, and the plural includes the singular and vice versa.

C:\WP\PJK\1422.WPD

7

EXHIBIT A PAGE LL

EXHIBIT  1  PAGE  34

24.    Knowing and Voluntary Agreement. Each Party hereto acknowledges that it has entered into this Agreement knowingly and voluntarily of its own free will and under no duress of any nature.

25.    Time is of the Essence. Each Party hereto acknowledges that time is strictly of the essence in the performance of each Party's obligations hereunder.

26.    Legal Representation. Each of the Parties hereto acknowledges that it has been represented by, and has relied upon the advice of, separate legal counsel with respect to the negotiation and drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first above written.

AGREED (SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT):
SENNA INVESTMENTS, LLC

SENNA INVESTMENTS, LLC

By:_____

SENNA INVESTMENTS, LLC

By:_____

SENNA INVESTMENTS, LLC

By:_____

WENETA M.A. KOSMALA,
CHAPTER 7 TRUSTEE

By:_____
        Weneta M.A. Kosmala, Chapter 7 Trustee

C:\WPXJIG\1422.WPD

8

EXHIBIT A PAGE 12

EXHIBIT 1    PAGE 35

24. Knowing and Voluntary Agreement. Each Party hereto acknowledges that it has entered into this Agreement knowingly and voluntarily of its own free will and under no duress of any nature.

25. Time is of the Essence. Each Party hereto acknowledges that time is strictly of the essence in the performance of each Party's obligations hereunder.

26. Legal Representation. Each of the Parties hereto acknowledges that it has been represented by, and has relied upon the advice of, separate legal counsel with respect to the negotiation and drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first above written.

AGREED (SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT):
SENNA INVESTMENTS, LLC

SENNA INVESTMENTS, LLC

By:

SENNA INVESTMENTS, LLC

By:

SENNA INVESTMENTS, LLC

By:

WENETA M.A. KOSMALA,
CHAPTER 7 TRUSTEE

By: _____
        Weneta M.A. Kosmala, Chapter 7 Trustee

EXHIBIT A PAGE 3

EXHIBIT  1   PAGE 36

24.    Knowing and Voluntary Agreement. Each Party hereto acknowledges that it has entered into this Agreement knowingly and voluntarily of its own free will and under no duress of any nature.

25.    Time is of the Essence. Each Party hereto acknowledges that time is strictly of the essence in the performance of each Party's obligations hereunder.

26.    Legal Representation. Each of the Parties hereto acknowledges that it has been represented by, and has relied upon the advice of, separate legal counsel with respect to the negotiation and drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first above written.

AGREED (SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT):
SENNA INVESTMENTS, LLC

SENNA INVESTMENTS, LLC

By:_____

SENNA INVESTMENTS, LLC

By:_____

SENNA INVESTMENTS, LLC

By:_____

WENETA M.A. KOSMALA
CHAPTER 7 TRUSTEE

By:_____
        Weneta M.A. Kosmala, Chapter 7 Trustee

C:\WP\SLKOI1422.WPD

8

EXHIBIT A PAGE 14

EXHIBIT 1   PAGE 37

1

### CERTIFICATE RE NOTICE

2    The undersigned Attorney hereby certifies that:

3         1.    The Entities served as set forth in the annexed Proof Of Service are all of the entities required by applicable law to be served with the pleading referred to therein; and

4

5         2.    The names and addresses of such entities set forth in the annexed Proof Of Service are their correct names and addresses according to the records of the United States Bankruptcy Court for the case specified below in which such Proof of Service is to be filed.

6

7    The undersigned hereby acknowledges that this Certificate Re Notice is filed in compliance with Federal Rule of Bankruptcy Procedure 9011(a) and may be relied upon by the Bankruptcy Court for the purpose of determining whether each pleading which is subject of such Proof of Service has been properly served.

8

9

10                                      MARSHACK SHULMAN HODGES & BASTIAN LLP

11

12    Dated: March 1̲, 2004         By: _____
                                        Mark Bradshaw
13                                      Counsel for Senna Investments LLC

14
      Case Name:                  In re CBL Insurance Services, Inc.
15    Case No.:                   SA 01-20377 RA
      Date and Time of Hearing:   February 3, 2004 @ 3:00 p.m., Ctrm: 6C
16

17

18

19

20

21

22

23

24

25

26

27

28

MARSHACK SHULMAN
HODGES & BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

5

2883-000\G:\Wp\Cases\S-T\Senna\Pld\Sale-9019 Order_002.doc

EXHIBIT  1  PAGE  38

1                               **PROOF OF SERVICE**

2   STATE OF CALIFORNIA, COUNTY OF ORANGE

3   I am employed in the City of Foothill Ranch, County of Orange, State of California. I am over the
age of 18 years and not a party to the within action. My business address is 26632 Towne Centre

4   Drive, Suite 300, Foothill Ranch, California 92610.

5   On March 11, 2004, I served the documents named below on the parties in this Action as follows:

6     DOCUMENT(S) SERVED:       **[PROPOSED] ORDER GRANTING CHAPTER 7 TRUSTEE'S**

7                                        **MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY
ALL OF THE ASSETS OF THE ESTATE PURSUANT TO 11**

8                                        **U.S.C. §§363(b) AND (f) TO SENNA INVESTMENTS, LLC, OR
IN THE ALTERNATIVE, AN ORDER ABANDONING ASSETS OF**

9                                        **THE ESTATE PURSUANT TO 11 U.S.C. §554**

    SERVED UPON:                    **SEE THE ATTACHED SERVICE LIST**

10   [X]    **(BY MAIL)** I caused each such envelope, with postage thereon fully prepaid, to be placed in
the United States mail at Foothill Ranch, California. I am readily familiar with the practice of

11          Marshack Shulman Hodges & Bastian LLP for collection and processing of correspondence
for mailing, said practice being that in the ordinary course of business, mail is deposited in

12          the United States Postal Service the same day as it is placed for collection. I am aware that
on motion of party served, service is presumed invalid if postal cancellation date or postage

13          meter date is more than one day after deposit for mailing in affidavit.

14   [ ]     **(BY FACSIMILE)** The above-referenced document was transmitted by facsimile transmission
and the transmission was reported as completed and without error. Pursuant to C.R.C.

15          2009(i), I either caused, or had someone cause, the transmitting machine to properly
transmit the attached documents to the facsimile numbers shown on the service list.

16

17   [ ]     **(BY OVERNIGHT DELIVERY)** I am readily familiar with the practice of Marshack Shulman
Hodges & Bastian LLP for collection and processing of documents for overnight delivery and

18          know that the document(s) described herein will be deposited in a box or other facility
regularly maintained by Federal Express, California Overnight, Overnight Express or Airborne

19          Express for overnight delivery or for overnight delivery by Express Mail via the United
States Postal Service.

20   [ ]     **(BY PERSONAL SERVICE)** I delivered to an authorized courier or driver authorized by ASAP

21          Corporate Services, Inc. to receive documents to be delivered on the same date. A proof of
service signed by the authorized courier shall be filed upon receipt from ASAP Corporate

22          Services, Inc.

23   [X]    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court, at
whose direction this service was made.

24   Executed on March 11, 2004, at Foothill Ranch, California.

25

26                                                             Jackie Rodriguez

27

28

EXHIBIT 1 PAGE 39

1

## SERVICE LIST

2

**DEBTOR**
CBL Insurance Services, Inc.

3  22600 Lambert, Building C, Suite 908
Lake Forest, CA 92630

4
**COUNSEL FOR SENNA INVESTMENTS**

5  Madison Spach, Esq.
4675 MacArthur Court, Suite 500

6  Newport Beach, CA 92660

7  **COUNSEL FOR DEBTOR, CBL INSURANCE SERVICES, INC.**
Donald Segretti, Esq.

8  8 Corporate Park, Suite 200
Irvine, CA 92618

9
**U.S. TRUSTEE**

10  Office of the U.S. Trustee
Ronald Reagan Federal Building

11  411 W. 4th St., Suite 9041
Santa Ana, CA 92701

12
**CHAPTER 7 TRUSTEE/MOVANT**

13  Weneta M.A. Kosmala
P.O. Box 16279

14  Irvine, CA 92623

15  **COUNSEL FOR CHAPTER 7 TRUSTEE/MOVANT**
Jeffrey I. Golden, Esq.

16  Reem J. Bello, Esq.
Albert, Welland & Golden, LLP

17  650 Town Center Dr., Suite 950
Costa Mesa, CA 92626

18
**COUNSEL FOR AAIC**

19  Paula Donsavage, Esq.
Kaufman & Logan, LLP

20  100 Spear Street, 12th Floor
San Francisco, CA 94111

21

22

23

24

25

26

27

28

2983-000\G:\Wp\Cases\S-T\Senna\Pld\Sale-9019 Order_002.doc

7

EXHIBIT  1  PAGE  40

| In re | Case No. SA 01-20377 RA |
|---|---|
| CBL INSURANCE SERVICES, INC. | Chapter 7 |
| Debtor. | |

### NOTICE OF ENTRY OF JUDGMENT OR ORDER
### AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment* or order entitled (*specify*):

RE

[PROPOSED] ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE ESTATE PURSUANT TO 11 U.S.C. §§363(b) AND (f) TO SENNA INVESTMENTS, LLC, OR IN THE ALTERNATIVE, AN ORDER ABANDONING ASSETS OF THE ESTATE PURSUANT TO 11 U.S.C. §554

was entered on (*specify date*):   MAR 17 2004

I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on (*specify date*):   MAR 17 2004

Dated: MAR 17 2004        JON D. CERETTO
                CLERK OF THE BANKRUPTCY COURT

By: _____Michelle Ilanons_____
                Deputy Clerk

EXHIBIT  1  PAGE 41

### SERVICE LIST

**U.S. TRUSTEE**
Office of the U.S. Trustee
Ronald Reagan Federal Building
411 W. 4th St., Suite 9041
Santa Ana, CA 92701

**DEBTOR**
CBL Insurance Services, Inc.
22600 Lambert, Building C, Suite 908
Lake Forest, CA 92630

**COUNSEL FOR SENNA INVESTMENTS**
Madison Spach, Esq.
4675 MacArthur Court, Suite 500
Newport Beach, CA 92660

**COUNSEL FOR DEBTOR, CBL INSURANCE SERVICES, INC.**
Donald Segretti, Esq.
8 Corporate Park, Suite 200
Irvine, CA 92618

**CHAPTER 7 TRUSTEE/MOVANT**
Weneta M.A. Kosmala
P.O. Box 16279
Irvine, CA 92623

**COUNSEL FOR CHAPTER 7 TRUSTEE/MOVANT**
Jeffrey I. Golden, Esq.
Reem J. Bello, Esq.
Albert, Weiland & Golden, LLP
650 Town Center Dr., Suite 950
Costa Mesa, CA 92626

**COUNSEL FOR AAIC**
Paula Donsavage, Esq.
Kaufman & Logan, LLP
100 Spear Street, 12th Floor
San Francisco, CA 94111

**COUNSEL FOR SENNA INVESTMENTS**
Mark Bradshaw, Esq.
Marshack Shulman Hodges & Bastian LLP
26632 Towne Centre Drive, Suite 300
Foothill Ranch, CA 92610

EXHIBIT __1__ PAGE __42__

| | | |
|---|---:|---:|
| Gross Settlement to GK | 1,530,000 | |
| GK fees | | $510,000.00 |
| GK costs | | $153,059.17 |
| Madison's fidelity bill | | $102,514.25 |
| Senna's bill at 12,500 per month for 14 months | | $175,000.00 |
| | | |
| Other Litigation Expenses Not Yet Determined | | $???,???.?? |
| Total Expenses | | $940,573.42 |
| | | |
| Preliminary Net Proceeds | 589,426.58 | |
| Trustee amt withheld is 20% after expenses including GK, Madison, Senna Corp. and TBD (This amount is in a trust account at Wells Fargo Bank Irvine) | | $117,885.32 |

EXHIBIT ___1___ PAGE __43__

**G | K**

## CONSENT TO SETTLEMENT AND AUTHORIZATION
## TO MAKE DISBURSEMENTS

We, SENNA INVESTMENTS, LLC, hereby authorize our attorneys, Girardi | Keese, to settle all our claims, and to dismiss with prejudice the lawsuit (SENNA INVESTMENTS, LLC, a California limited liability company on behalf of itself and as successor in interest to CBL INSURANCE SERVICES, INC. vs. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; IRM INSURANCE BROKERS INDEPENDENT RISK MANAGEMENT, a California corporation; JACK SMITH, an individual; and DOES 1 through 200, inclusive), filed in the Orange County Superior Court, Case No. . 03CC14812, in its entirety, for the total amount of ONE MILLION FIVE HUNDRED THIRTY THOUSAND DOLLARS AND 00/100 CENTS ($1,530,000.00).

Out of the settlement funds, I hereby authorize the following payments and disbursements:

**TOTAL SETTLEMENT:**                                    $1,530,000.00
($1,500,000 from Fidelity and Deposit; $30,000
 from Jack Smith/IRM)

(1)    To Girardi | Keese
        for attorneys' fees (33.33%):                    $  510,000.00
                                                         $1,020,000.00

(2)    To Girardi | Keese
        for costs incurred:

| | | |
|---|---|---|
| (a) Court Fees | $ 750.00 | |
| (b) Jury Fees | $ 1,250.00 | |
| (c) Court Reporters | $ 13,859.79 | |
| (d) Photocopying Expenses | $ 20,557.46 | |
| (e) Attorney Services | $ 4,901.90 | |
| (f) Travel Reimbursements | $ 2,668.20 | |
| (g) Investigation Services | $ 11,804.25 | |
| (h) Delivery | $ 2,555.57 | |
| (i) Arbitration Fees | $ 2,486.36 | |
| (j) Expert Witness Fees | $ 67,225.64 | |
| (k) Expert Retainers | $ 17,500.00 | |
| (l) Trial Illustrations/Boards | $ 7,500.00 | |

**TOTAL COSTS:**                        :        $153,059.17        $ 153,059.17

1

EXHIBIT  (2) PAGE  44

(3)    NET TO CLIENT AS OF
      **December 12, 2006**      :      $ 866,940.83

              TOTAL     :      $1,530,000.00

      We agree to the settlement and disbursements and agree to give our attorneys authority to execute all documents to complete and finalize the settlement and distribution described above.

Dated: _____

                    _____
                    CHARLES C. SEVEN
                    SENNA INVESTMENTS, LLC, on behalf
                    of itself and as successor in interest to
                    CBL INSURANCE SERVICES, INC.

2

EXHIBIT __2__ PAGE __45__

| | | |
|---|---|---|
| Gross Settlement to GK | 1,530,000 | |
| GK fees | | $510,000.00 |
| GK costs | | $153,059.17 |
| Madison's fidelity bill | | $102,514.25 |
| Senna's bill at 12,500 per month for 14 months | | $175,000.00 |
| Other Litigation Expenses Not Yet Determined | | $???,???.?? |
| Total Expenses | | $940,573.42 |
| Preliminary Net Proceeds | 589,426.58 | |
| Trustee amt withheld is 20% after expenses including GK, Madison, Senna Corp. and TBD (This amount is in a trust account at Wells Fargo Bank Irvine) | | $117,885.32 |